**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

RYAN O'DELL,                                           :
                                                       :
            Plaintiff,                                 :    Civil Action No. 23-cv-8180
                                                       :
v.                                                     :    **COMPLAINT FOR VIOLATIONS OF**
                                                       :    **SECTIONS 14(a) AND 20(a) OF THE**
DENBURY INC., KEVIN MEYERS,                            :    **SECURITIES EXCHANGE ACT OF**
ANTHONY ABATE, CAROLINE                                :    **1934**
ANGOORLY, JAMES CHAPMAN, CHRIS                         :
KENDALL, LYNN PETERSON, BRETT                          :    **JURY TRIAL DEMANDED**
WIGGS, and CINDY YEILDING,                             :
                                                       :
            Defendants.                                :
---------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Denbury Inc. ("Denbury or the "Company") the members Denbury's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Denbury and ExxonMobil Corporation and affiliates ("ExxonMobil").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on August 29, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby EMPF Corporation, a wholly owned subsidiary of ExxonMobil ("Merger Sub"), will merge with and into Denbury, with Denbury surviving as a wholly owned subsidiary of ExxonMobil (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on July 13, 2023 (the "Merger Agreement"), each Denbury stockholder will receive the right to receive 0.840 of a share of ExxonMobil common stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked Denbury's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan"), TPH & Co. ("TPH"), and PJT Partners LP ("PJT") and along with J.P. Morgan and TPH, the "Financial Advisors") in support of their fairness opinions.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Denbury's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

2

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Denbury stocks and has held such stocks since prior to the wrongs complained of herein.

10.      Individual Defendant Kevin Meyers has served as a member of the Board since July 2011 and is the Chairman of the Board.

11.      Individual Defendant Anthony Abate has served as a member of the Board since September 2020.

12.      Individual Defendant Caroline Angoorly has served as a member of the Board since September 2020.

13.      Individual Defendant James Chapman has served as a member of the Board since September 2020.

14.      Individual Defendant Chris Kendall has served as a member of the Board since July 2017 and is the Company's President and Chief Executive Officer.

15.     Individual Defendant Lynn Peterson has served as a member of the Board since 2017.

16.     Individual Defendant Brett Wiggs has served as a member of the Board since September 2020.

17.     Individual Defendant Cindy Yeilding has served as a member of the Board since March 2021.

18.     Defendant Denbury is a Delaware corporation and maintains its principal offices at 5851 Legacy Circle, Suite 1200, Plano, Texas 75024.  The Company's stock trades on the New York Stock Exchange under the symbol "DEN."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.**     **The Proposed Transaction**

21.     Denbury operates as an independent energy company in the Gulf Coast and Rocky Mountain regions. It holds interests in various oil and natural gas properties located in Mississippi, Texas, and Louisiana in the Gulf Coast region; and in Montana, North Dakota, and Wyoming in the Rocky Mountain region. The Company was formerly known as Denbury Resources Inc. and changed its name to Denbury Inc. in September 2020. Denbury was founded in 1951 and is headquartered in Plano, Texas.

22.     On July 13, 2023, ExxonMobil announced the Proposed Transaction:

> SPRING, Texas--(BUSINESS WIRE)--Exxon Mobil Corporation (NYSE: XOM) today announced it has entered into a definitive agreement to acquire Denbury Inc. (NYSE: DEN), an experienced

developer of carbon capture, utilization and storage (CCS) solutions and enhanced oil recovery. The acquisition is an all-stock transaction valued at $4.9 billion, or $89.45 per share based on ExxonMobil's closing price on July 12, 2023. Under the terms of the agreement, Denbury shareholders will receive 0.84 shares of ExxonMobil for each Denbury share.

"Acquiring Denbury reflects our determination to profitably grow our Low Carbon Solutions business by serving a range of hard-to-decarbonize industries with a comprehensive carbon capture and sequestration offering," said Darren Woods, Chairman and CEO. "The breadth of Denbury's network, when added to ExxonMobil's decades of experience and capabilities in CCS, gives us the opportunity to play an even greater role in a thoughtful energy transition, as we continue to deliver on our commitment to provide the world with the vital energy and products it needs."

The transaction synergies are expected to drive strong growth and returns for ExxonMobil. The acquisition of Denbury provides ExxonMobil with the largest owned and operated $CO_2$ pipeline network in the U.S. at 1,300 miles, including nearly 925 miles of $CO_2$ pipelines in Louisiana, Texas, and Mississippi – located within one of the largest U.S. markets for $CO_2$ emissions, as well as 10 strategically located onshore sequestration sites. A cost-efficient transportation and storage system accelerates CCS deployment for ExxonMobil and third-party customers over the next decade and underpins multiple low carbon value chains including CCS, hydrogen, ammonia, biofuels, and direct air capture.

Chris Kendall, Denbury's President and Chief Executive Officer commented, "This transaction is a compelling opportunity for Denbury to join an admired global energy leader with a low-carbon focus, a robust balance sheet and a leading shareholder return program. Over the last few years, Denbury has made significant progress executing our strategic plan, strengthening our enhanced oil recovery operations and capitalizing on our unrivaled infrastructure to accelerate the growth of our $CO_2$ transportation and storage business. To build even further on this positive momentum, the Denbury Board of Directors and management team undertook a thorough review process and considered a number of alternatives to maximize long-term value. Through this process, it became clear that the transaction with ExxonMobil is in the best interests of our company, our shareholders, and all Denbury stakeholders. Importantly, given the significant capital and years of work required to fully develop our $CO_2$ business, ExxonMobil is the ideal partner with extensive resources and capabilities. The all-equity

consideration will allow Denbury shareholders to participate in the upside of ExxonMobil's stock while benefitting from its strong capital return strategy. We look forward to bringing together our highly complementary cultures and teams to realize the long-term value and benefits of this combination."

"Denbury's advantaged $CO_2$ infrastructure provides significant opportunities to expand and accelerate ExxonMobil's low-carbon leadership across our Gulf Coast value chains," said Dan Ammann, President, ExxonMobil Low Carbon Solutions. "Once fully developed and optimized, this combination of assets and capabilities has the potential to profitably reduce emissions by more than 100 million metric tons per year in one of the highest-emitting regions of the U.S."

In addition to Denbury's carbon capture and storage assets, the acquisition includes Gulf Coast and Rocky Mountain oil and natural gas operations. These operations consist of proved reserves totaling over 200 million barrels of oil equivalent, with 47,000 oil-equivalent barrels per day of current production, providing immediate operating cash flow and near-term optionality for $CO_2$ offtake and execution of the CCS business.

The boards of directors of both companies have unanimously approved the transaction, which is subject to customary regulatory reviews and approvals. It is also subject to approval by Denbury shareholders. The transaction is expected to close in the 4th quarter of 2023.

* * *

23.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Denbury's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

24.     On August 29, 2023, Denbury and ExxonMobil jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement

was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and ExxonMobil which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of ExxonMobil and Denbury prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the *Denbury Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

29.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most

comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

30.     Further, the Registration Statement fails to disclose any prospective financial information for ExxonMobil. This information is material since Denbury stockholders will own shares of ExxonMobil stock after the Proposed Transaction closes.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31.     With respect to J.P. Morgan's *Sum-of-the-Parts – Selected Public Trading Multiples Analysis*, the Registration Statement fails to disclose: (i) the financial metrics for each company selected by J.P. Morgan for the analysis; and (ii) the inputs and assumption underlying the reference ranges of 3.50x – 4.50x and 1.5x – 2.75x.

32.     With respect to J.P. Morgan's *Sum-of-the-Parts – Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of terminal values for the company; (ii) the inputs and assumptions underlying the terminal forward multiples of 16.00x to 17.50x; and (iii) the inputs and assumptions underlying the discount rates ranging from 8.75% to 10.75% for the Company's EOR business and 12.25% to 14.25% for the Company's CCUS business.

33.     With respect to J.P. Morgan's *Analyst Price Target* analysis, the Registration Statement fails to disclose: (i) the equity research analysts observed; and (iii) the price targets published by each analyst.

34.     With respect to TPH's *Selected Public Companies Trading Analysis*, the Registration Statement fails to disclose: (i) the financial metrics for each company selected by TPH for the analysis; and (ii) the inputs and assumptions underlying the selected multiples ranging from 3.00x to 4.00x and 1.50x to 3.00x.

35.     With respect to TPH's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of terminal values for the company; (ii) the inputs and assumptions underlying the EV/EBITDA multiples of 3.00x to 4.00x; (iii) the inputs and assumptions underlying the discount rates ranging from 9.00% to 11.00% for the Company's EOR business and 14.00% to 18.00% for the Company's CCUS business; (iv) the Company's net debt; and (v) the number of fully diluted shares outstanding for the Company.

36.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.    The Individual Defendants acted as controlling persons of Denbury within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Denbury, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Denbury, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Denbury, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed

by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

47.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: September 15, 2023                    **MELWANI & CHAN LLP**

By:  */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*